Chantel M. Schimming, Esq.
Nevada Bar No. 08886
Ghidotti | Berger LLP
7251 W. Lake Mead Blvd., Ste. 470
Las Vegas, NV 89128
Ph: 949-427-2010
Fax: 949-427-2732
Email:  cschimming@ghidottiberger.com
Attorneys for Defendants, *SN Servicing Corporation and*
*U.S. Bank Trust, N.A., as Trustee for LB-Dwelling Series VI Trust*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAKOTA DELANCE,<br><br>Plaintiff,<br><br>v.<br><br>UNION HOME MORTGAGE CORP., an Ohio Corporation; SN SERVICING CORPORATION, an Alaskan Corporation; U.S. BANK TRUST, N.A., AS TRUSTEE FOR LB-DWELLING SERIES VI TRUST, a trust entity, and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.: 2:26-cv-00177-GMN-EJY<br><br>**SN SERVICING CORPORATION AND U.S. BANK TRUST, N.A., AS TRUSTEE FOR LB-DWELLING SERIES VI TRUST'S RESPONSE TO PLANTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER / OSC RE REPLIMINARY INJUNCTION** |

Defendants, SN SERVICING CORPORATION ("SN") and U.S. BANK TRUST, N.A., AS TRUSTEE FOR LB-DWELLING SERIES VI TRUST ("US Bank Trust") (collectively "Defendants"), by and through their counsel, Chantel M. Schimming, Esq., of the law firm of Ghidotti | Berger LLP, hereby respectfully submit this response to Plaintiff's Emergency Motion for a Temporary Restraining Order / OSC Re Preliminary Injunction.

This response is made based on the pleadings and papers on file herein, the following Memorandum of Points and Authorities, and any oral argument this Court may entertain.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff's Motion fails at the outset because he cannot satisfy the most crucial element for injunctive relief: a likelihood of success on the merits. Plaintiff seeks the extraordinary remedy of a temporary restraining order to stop the foreclosure sale of his property, this despite conceding that he never executed a loan modification, that Defendants' Rule 12(b)(6) motions identifying several pleading defects remain pending, and despite admitting that the foreclosure arises from his own continued payment default. On these undisputed facts alone, Plaintiff cannot demonstrate a likelihood of success on the merits, and his request for injunctive relief should be denied.

Plaintiff's claims are premised on an alleged loan modification that Plaintiff expressly admits was never finalized, never executed, and is not memorialized by an enforceable written agreement. He outright admits he remained uncertain about the essential terms and validity of the purported agreement. These admissions are fundamentally inconsistent with the existence of an enforceable contract and significantly undermine Plaintiff's ability to establish a likelihood of success on the merits.

Plaintiff cannot manufacture irreparable harm by refusing to satisfy his payment obligations, or refusing to clarify what it is he believes should be his payment obligations under the alleged loan modification and then seeking to prevent Defendants from exercising contractual and statutory remedies. The foreclosure process was initiated due to Plaintiff's continuing default, not because of any wrongful conduct by Defendants. Plaintiff has not tendered the indebtedness, has not resumed making contractual payments, and has not shown any ability to cure the default. Because Plaintiff cannot establish any of the requirements for preliminary injunctive relief, the Motion should be denied.

…

…

…

## II.    LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[1] Such relief is "never awarded as of right."[2] The same legal standard governs requests for temporary restraining orders and preliminary injunctions.[3] The Supreme Court further emphasized that injunctive relief is a "drastic and extraordinary remedy" which should not be granted as a matter of course.[4]

To obtain such relief, the movant must demonstrate a likelihood of success on the merits, a likelihood of irreparable harm absent relief, the balance of equities tips in the movant's favor, and that an injunction is in the public interest.[5] Although the Ninth Circuit recognizes a limited "serious questions" sliding-scale approach, a movant must still demonstrate a likelihood of irreparable harm and that the balance of hardships tips sharply in its favor.[6] Failure to establish any one of these requirements warrants denial of the requested relief.

Because Plaintiff cannot satisfy any of the Winter factors, and certainly cannot make the required clear showing of a likelihood of success on the merits, any requested injunctive relief should be denied in its entirety.

…

---

[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (per curiam))

[2] *Id*. at 24.

[3] *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[4] *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 1803 (1982); *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted).

[5] *Winter*, 555 U.S. at 20; *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

[6] *Alliance for the Wild Rockies v. Cottrell*, 623 F.3d 1127, 1131-1135 (2008).

3

## III.    ARGUMENT

### A.  <u>Pending Motion to Dismiss.</u>

While the existence of pending Motions to Dismiss does not, by itself, preclude the issuance of injunctive relief, they are highly relevant to the Court's assessment of Plaintiff's likelihood of success on the merits. Here, two fully briefed motions challenging the legal sufficiency of every claim asserted in the First Amended Complaint remain pending before this Court. Plaintiff's request for extraordinary relief therefore comes before the Court while serious questions remain as to whether any viable claim exists. These pending dispositive motions underscore that Plaintiff has not made the clear showing of a likelihood of success on the merits required to justify preliminary injunctive relief. *See* [ECF No.'s 14, 17, 18, 23, 26, 29].

### B.  <u>Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits</u>.

Plaintiff's request for injunctive relief depends entirely upon the viability of his underlying claims. However, Plaintiff's Complaint and the pending Motion to Dismiss establish that the claims are legally deficient.

#### 1.  **Plaintiff's own pleadings establish no enforceable modification exists.**

Plaintiff's breach of contract claim fails at the outset because he cannot identify an existing enforceable contract with definite term. One of the allegations is Plaintiff's complaint expressly states that no enforceable written agreement evidences the alleged loan modification, and Plaintiff himself acknowledges that he was uncertain about the terms of the alleged agreement. See [ECF No. 6 at ¶¶ 42-45, 76]. Plaintiff concedes in the Complaint that he did not execute the proposed modification because the terms were not what he believed the parties had agreed upon. [ECF No. 6 at ¶ 44]. He also questions the validity of the document he received and reiterates throughout the Complaint that he remained uncertain regarding essential terms. [ECFF No. 6 at ¶¶ 45, 36-41]. These facts alone negate any contract-based theories as a matter of Nevada law.

A contract requires definite and certain terms, and Plaintiff's own admission that the nature and validity of the modification agreement is uncertain undermines his ability to demonstrate the existence of a valid, enforceable contract as the first element of his claim. Defendants' Motion to Dismiss further details Plaintiff's own allegations regarding lack of clarity on essential terms and the absence of an executed modification bely contract existence, and the impact each of those has on contract validity. [ECF No. 23 at 6:10-8:12]. The Motion to Dismiss also explains that anticipatory repudiation requires a valid contract and clear, unequivocal refusal, which Plaintiff has not alleged. [ECF No. 23 at 8:18-9:14]. Even more, any such "repudiation" does not excuse Plaintiff from continuing to make payments. By his own admissions, Plaintiff has remained delinquent on his payment obligations throughout this process. [ECF No. 6]. Another issue raised in Defendants' Motion to Dismiss that is an obstacle to a valid, enforceable contract, is the fact that consent of all borrowers is required for a loan modification and Plaintiff's wife is on the loan but was not involved in this alleged loan modification process. [ECF No. 23 at 17:5-12].

As to Defendants, Plaintiff has not alleged that either entity was a party to or bound by any modification agreement entered into by UHM. None of the allegations even imply that SN was part of negotiations or had any knowledge of loan modification discussions at the time of the servicing transfer. A successor servicer is not automatically bound by an alleged oral or informal promise made by a prior servicer, particularly where the written modification agreement's validity is disputed on its face. Without identifying a definite, binding, and enforceable contract to which all Defendants are parties, Plaintiff cannot demonstrate a likelihood of success on the merits of his breach of contract claim.

An additional obstacle to Plaintiff's likelihood of success on the merits of his breach of contract claim and the ability to enforce the alleged modification is Nevada's statute of frauds. Plaintiff's concession that he never executed the modification and the fact that Plaintiff does not allege to have any signed binding agreement reinforce that Plaintiff cannot establish an enforceable agreement under the

statute of frauds. Plaintiff should be prohibited from obtaining relief enjoining a foreclosure sale based upon an alleged contract that Plaintiff admits was never finalized.

### 2. Plaintiff's equitable and derivative claims likewise fail.

The implied covenant of good faith and fair dealing cannot exist in the absence of an underlying enforceable contract. Because Plaintiff has failed to identify a valid enforceable modification agreement, there is no contract upon which an implied covenant claim can be based. Moreover, even assuming an underlying contract existed, the implied covenant claim cannot be used to impose obligations beyond those in the express contract or to effectively rewrite the parties' agreement. SN Servicing, as the successor servicer, is entitled to enforce the original loan terms if no valid modification was ever properly executed and transferred. The fact that Plaintiff made payments to UHM during the trial modification period (notably, not all payments during that period were made) does not transform UHM's servicing-related communications into a binding modification of the loan that is enforceable against a successor servicer. Additionally, U.S. Bank Trust's liability as the loan owner for the conduct of its servicers requires a showing of agency or authorization that Plaintiff has not adequately established.

Defendants' Motion to Dismiss thoroughly explains the failures of the implied covenant claim, along with why injunctive relief and declaratory relief are remedies dependent on viable underlying claims. [ECF No. 23 at 13:5-17:4]. Each of these defects undermine Plaintiff's ability to demonstrate a likelihood of success on the merits necessary for injunctive relief.

### 3. Plaintiff's admitted continuing payment bars quiet title.

Plaintiff does not dispute that he stopped making the mortgage payments required under the loan documents. The foreclosure proceedings are a direct result of his admitted default and continued failure to address the delinquency. Plaintiff is not entitled to equitable relief while remaining in default. A party seeking injunctive relief must first do equity. Plaintiff cannot ask the court to stop the foreclosure while simultaneously refusing to cure the default, pay the debt owed, or make any arrangements to resolve the

delinquency.

Plaintiff's quiet title claim fails, in part, for the same reason. He has not tendered the full amount of the undisputed debt owed on the loan, which is a prerequisite to a quiet title action challenging a deed of trust. A party seeking to quiet title against a valid deed of trust must generally demonstrate that the underlying obligation has been satisfied or that the lien is otherwise invalid.

Further, his quiet title and declaratory relief claims are unlikely to succeed because they depend entirely on his ability to establish that a valid and enforceable loan modification altered his obligations under the loan. Plaintiff does not dispute the existence of the original loan of $348,000.00 exists and that payments have been missed since January 2024. Rather, he disputes only the terms under which the default should be calculated given the alleged modification.

This theory fails absent proof that a binding modification exists and became part of the loan agreement. Plaintiff's allegations that he made certain payments and was told a modification was forthcoming do not establish an enforceable modification or a superior interest in the Property. Until Plaintiff can demonstrate both the existence of a valid, binding modification and tender of all amounts legitimately due, the Notice of Default remains based on his failure to perform under the existing loan obligations and his quiet title and declaratory relief claims do not support the likelihood of success required for injunctive relief.

**4. Plaintiff's Negligent Misrepresentation and Promissory Estoppel claims are not asserted against Defendants and do not support injunctive relief.**

Plaintiff's negligent misrepresentation claim is unlikely to succeed because the alleged misrepresentations are promises of future conduct, not false statements of existing fact. Plaintiff alleges he was told that a modification would be "forthcoming" and a new servicer would honor any modification. [ECF No. 6 at ¶¶ 32, 39, 62]. These statements concern future events, not present or past facts, and therefore cannot support a negligent misrepresentation claim. Negligent misrepresentation

7

requires a false representation of a past or present fact, not a promise about future performance.[7] At most, an unfulfilled promise to provide a future loan modification sounds in contract, not tort – and a legal binding contract was not formed in this instance.

Furthermore, Plaintiff's own conduct undermines the justifiable reliance element given that he acknowledges he had questions about the validity and enforceability of the modification agreement. [ECF No. 6 at ¶¶42-45, ECF No. 30 at 8:12-20]. It is axiomatic that a party who proceeds despite acknowledged uncertainty about the validity of the very document upon which he claims to have relied cannot establish that his reliance was justifiable.

Finally, Plaintiff seeks the same damages for negligent misrepresentation that he seeks for breach of contract. Because the alleged injury arises from the alleged failure to honor the purported modification agreement, the negligent misrepresentation claim is duplicative and improperly attempts to convert a contract dispute into a tort claim. It is therefore unlikely to succeed.

As to his promissory estoppel claim, Plaintiff argues he has a likelihood of success on his promissory estoppel claim because UHM made a clear promise in late 2024 that if Plaintiff made three trial payments, he would qualify for a loan modification with no other conditions attached. [ECF No. 30 at 10:7-9]. Plaintiff's promissory estoppel claim fails because the promise alleged, even if made, was not a promise to provide a specific, definitive modification with certain terms, but rather a promise that Plaintiff would "qualify" for a modification, which is a conditional and preliminary step, not a final, unconditional commitment. A promise to consider or qualify a borrower for a modification is not the type of clear and definite promise upon which promissory estoppel can be founded.

…

---

[7] *Cundiff v. Dollar Loan Ctr., LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010); *Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1083 (D. Nev. 2012)

Additionally, Plaintiff cannot satisfy the element that he was "ignorant of the true state of facts" when he acknowledges in the motion that he had 'significant questions as to the validity' of the modification agreement sent to him and was aware of UHM's inconsistent representations over a period of months. [ECF No. 6, EC F No. 30 at 5:18-6:19, 8:7-15]. A party who is aware of conflicting information and uncertainty cannot claim ignorance of the true state of facts. Furthermore, any detrimental reliance must be reasonable, and Plaintiff's continued reliance on representations from a servicer who had been providing inconsistent information for months may not meet that standard.

**C. Plaintiff Has Not Shown Irreparable Harm.**

While Nevada law recognizes that real property is unique, the mere fact that real property is involved does not automatically establish irreparable harm in every foreclosure case. Courts must still consider whether the alleged injury stems from an actionable wrong, whether the plaintiff has demonstrated a likelihood of success on the merits, and whether the harm is of a nature that cannot be adequately remedied through available legal remedies. Here, Plaintiff's alleged harm arises from his admitted payment default and his inability to establish an enforceable loan modification. Because the foreclosure results from Plaintiff's own nonperformance, not from the violation of any established right to a modification, the claimed injury does not justify extraordinary equitable intervention in the form of injunctive relief.

Plaintiff is also unable to show that his alleged harm cannot be adequately remedied through monetary damages on the specific facts of this case. His claims center on whether a loan modification was validly formed and whether the amounts claimed due are accurate. This is not a case in which Plaintiff contends Defendants have no interest in the Property or that the underlying loan documents are invalid. Plaintiff acknowledges the existence of the Note and Deed of Trust, acknowledges that payments remain owing, and seeks only to alter the amount and timing of repayment obligations based upon an alleged modification. The parties' dispute is therefore fundamentally economic in nature. Such

disputes are routinely resolved through damages and declaratory relief, not the extraordinary remedy of enjoining a foreclosure sale. Significantly, Plaintiff himself alleges entitlement to monetary damages arising out of the purported failure to provide or honor a loan modification. Plaintiff seeks damages for breach of contract, implied covenant, negligent misrepresentation, and promissory estoppel. [ECF No. 6 at ¶¶ 78, 93, 101, 13:9-10].

Having alleged that monetary compensation can remedy his purported injuries, Plaintiff cannot simultaneously establish that legal remedies are inadequate. Where the primary injury is economic and capable of calculation, irreparable harm is absent. At bottom, even if Plaintiff ultimately proves that UHM made actionable representations regarding a loan modification, any resulting damages can be calculated and awarded without enjoining foreclosure proceedings arising from Plaintiff's admitted default.

Finally, the alleged harm is largely self-created, resulting directly from Plaintiff's own default and continued failure to satisfy his payment obligations. Plaintiff seeks to characterize foreclosure as irreparable injury while simultaneously acknowledging that he stopped making payments and has not taken steps to cure the delinquency or otherwise resolve the default. Plaintiff cannot rely on the consequences of his own nonpayment as the basis for equitable relief.

**D. The Balance of Equities Favors Defendants.**

The balance of hardships does not weigh heavily in Plaintiff's favor as he contends. The equities do not favor a borrower who admits default but seeks to indefinitely delay enforcement of the loan. Defendants' Motion to Dismiss details Plaintiff's admissions of nonperformance and the absence of any enforceable modification, underscoring that the equities do not favor enjoining contractual foreclosure remedies. [ECF No. 23 at 2:5-27, 4:9-11, 15:3-19].

Defendants' have a legitimate, recorded security interest in the Property in the form of a deed of trust securing a $348,000.00 loan. Plaintiff has not made regular mortgage payments since January 2024,

a period of over two years. Yet Plaintiff does not propose to cure the default, tender the arrearage, or make ongoing payments sufficient to protect Defendants' collateral position pending resolution of this lawsuit. Instead, he seeks to prevent Defendants from enforcing their contractual and legal rights for an indefinite period during the pendency of this litigation, during which time the loan continues to accrue interest and the value of the security could be affected. Ultimately, Plaintiff continues to further increase an already substantial delinquency and requiring Defendants to continue advancing servicing expenses while blanketly refusing to make payments toward his obligation.

The fact that Defendants are large financial institutions does not diminish the legal significance of their contractual rights or the harm caused by being unable to enforce a valid security interest. Maintaining the integrity of loan documents and Nevada's foreclosure process outweighs Plaintiff's unsupported modification theory.

**E.  The Public Interest Disfavors An Injunction.**

The public interest favors enforcement of lawful contracts and Nevada's statutory foreclosure framework. Here, the public interest is not served by enjoining a foreclosure based on an alleged modification the terms of which were never finalized and are disputed by Plaintiff himself, a document that was never executed, and an alleged agreement that, even if it existed, arose from claimed discussions with a representative of a prior servicer.

The public interest also favors denial of extraordinary relief where a movant cannot show a likelihood of success. As set out in Defendants' Motion to Dismiss, Plaintiff's theories would circumvent Nevada's statute of frauds and established contract principles by modifying unexecuted, indefinite negotiations into binding obligations.

Granting injunctive relief under these circumstances would effectively permit borrowers to indefinitely forestall foreclosure merely by alleging incomplete modification discussions. The public interest therefore weighs against issuance of a TRO.

**F.  If Any Injunctive Relief Is Granted, Plaintiff Must Post Appropriate Security.**

Plaintiff's proposed bond of only $1,562.68 per month, which is the original Note payment, is wholly inadequate to protect Defendants from the actual financial harm caused by delaying foreclosure. The loan has been in default since January 2024 and SN has demanded $43,049.49 in past-due amounts. During the period the injunction is in effect, the loan will continue to accrue interest, late charges, attorney's fees, and foreclosure related expenses at rates that far exceed Plaintiff's proposed bond.

FRCP Rule 65(c) requires security sufficient to compensate the enjoined party for any wrongful injunction, which must account for the full scope of potential damages including the ongoing accrual of interest on a $348,000.00 loan, the expenses of maintaining the foreclosure proceedings in abeyance, and the costs of preserving the Property while foreclosure is delayed.

Plaintiff's argument that Defendants suffer no harm because equity allegedly increases with each payment ignores the economic impact of delaying enforcement of a defaulted loan. Appreciation, if any, does not compensate for the cost of carrying a non-performing loan, the loss of the ability to enforce contractual remedies, and the legal and administrative costs associated with delayed enforcement. The Court should therefore require a bond that adequately protects Defendants' full financial exposure during the injunction period, rather than a pre-default payment amount alone.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Emergency Motion for Temporary Restraining Order / OSC re Preliminary Injunction in its entirety. Plaintiff has failed to demonstrate a likelihood of success on the merits, irreparable harm, or that the balance of equities and public interest favor the extraordinary relief requested. Instead, Plaintiff seeks to merely postpone enforcement of a loan that he admits he stopped paying based on an alleged modification he has not shown is valid or enforceable.

…

12

If the Court is inclined to grant any interim injunctive relief, it should immediately set an expedited preliminary injunction hearing and require Plaintiff to post security under Rule 65(c) in an amount sufficient to protect Defendants from all losses caused by a wrongful restraint, including arrears, accrued and accruing interest, fees, costs, and other expenses associated with the delayed enforcement of Defendants' security interest. The Court should also require Plaintiff to make timely ongoing payments or deposits in the amount determined by the Court and to remain current on all obligations necessary to preserve the Property, including taxes, insurance, and property maintenance, during the pendency of any injunctive relief.

DATED this 15th day of July, 2026.

**GHIDOTTI | BERGER LLP**

*/s/ Chantel M. Schimming*
Chantel M. Schimming, Esq.
7251 W. Lake Mead Blvd., Ste. 470
Las Vegas, NV 89128
Email: cschimming@ghidottiberger.com
*Attorneys for Plaintiff, SN Servicing Corporation and*
*U.S. Bank Trust, N.A., as Trustee for LB-Dwelling Series*
*VI Trust*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 15th day of July, 2026, and pursuant to FRCP 5, I electronically served via CM/ECF a true and correct copy of the foregoing **REPLY IN SUPPORT OF SN SERVICING CORPORATION AND U.S. BANK TRUST, N.A., AS TRUSTEE FOR LB-DWELLING SERIES VI TRUST'S MOTION TO DISMISS** as follows:

Andrew Bao, Esq.
Andrew Bao & Associates
8020 S. Rainbow Blvd., Ste 100-163
Las Vegas, NV 89139
Email: abao@abao.law

Bryan Baugh, Esq.
Christopher Turtzo, Esq.
MORRIS, SULLIVAN, LEMKUL & TURTZO, LLP
3960 Howard Hughes Pkwy, Suite 400
Las Vegas, NV 89169
Email: Baugh@mslt.law
Email: turtzo@mslt.law

/s/ Chantel Schimming
for Ghidotti | Berger LLP

14